expression of a will, effect must be given to it according to those rules which, from long acquiescence, have acquired the force of authority. The present seems to be such a case. We are without any indication as to the intentions of the testator in making this disposition of his realty other than in the particular clause of the will itself." Bisson v. Railroad Co., 143 N. Y. 128, 38 N. E. 104.

We have carefully examined the codicils to the will, but find nothing in them that will tend to indicate that the testator had a different intention. The first codicil of any importance was executed 12 years after the will, and the other two upwards of 15 years after the will. The situation of the testator's children had then materially changed. The youngest children had become of age, and an intention of the testator at that time as a modification of his original will, executed in 1865, seems to us important in determining what he intended by the words used. There is, however, nothing in either of these codicils that indicates that the testator used these words in question in other than their primary legal significance, or from which we could find that the testator intended to die intestate as to any part of his estate. It being clear, therefore, that it was the intention of the testator that upon the death of either of his children without issue the property should be divided among the heirs at law of the child so dying equally, the only remaining question is whether such heirs at law took per capita or per stirpes; and we think that the words used by the testator determine this question. The real estate belonging to any child dying is devised to the "issue or heirs" of such child, to be equally divided between them. The direction as to the division applies equally whether the estate goes to the issue of the child dying or to its heirs generally; and it is to be divided, not according to any share, but equally between them,—that is, between the heirs of the child dying. The rule is stated in Bisson v. Railroad Co., supra, as follows:

"There being but the one class, there can be no doubt but that the division must be made per capita among the persons entitled, and not per stirpes. I think the words 'share and share alike' made that sufficiently clear. Such a direction cannot be distinguished, practically, from one to divide equally. The testator has used the word 'heirs' to describe the persons who are to take, and not to fix the interest which would vest in each person by virtue of his heirship, or representation of a stock,—a preferable construction, where the context will permit."

We think, therefore, that the construction adopted by the referee was right, and that the judgment should be affirmed, with costs. All concur.

---

(10 App. Div. 454.)

GEOGAGN v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Division, Second Department. December 1, 1896.)

CARRIERS OF PASSENGERS—CONTRIBUTORY NEGLIGENCE.

It is contributory negligence for a passenger to jump, in the nighttime, from the side door of the baggage compartment of a smoking car, while the car was moving and the ground was covered with snow and ice, even though he was unable to gain an exit from the rear door of the car, and was directed by the conductor "to go forward," where the other end door was unlocked.

Appeal from trial term, Westchester county.

Action by William H. Geogagn against the New York, New Haven & Hartford Railroad Company for personal injuries. From a judgment in favor of defendant, entered on a nonsuit, plaintiff appeals. Affirmed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Frederick Wm. Sherman, for appellant.

Henry W. Taft, for respondent.

CULLEN, J. The plaintiff was a passenger on a train on defendant's railroad, intending to alight at Port Chester. He was seated in the smoking car. This car was a so-called "combination" car, the rear part of it being designed for occupation by persons smoking, while the forward part was the same as a baggage car, and used as a receptacle for baggage. When the car reached the station at Port Chester, the plaintiff sought to open the rear door, that he might alight from the train. He found himself unable to open the door. The conductor, coming up at the time, also tried to open the door, and failed. He then told the plaintiff and the other passengers congregated at the door to go forward. The plaintiff thereupon went forward into the baggage compartment, to the side door opening, where baggage is taken in and put out, jumped from the car to the ground, and met serious injuries. The car was moving slightly at the time, and this the plaintiff knew. There was a door at the front end of the car, leading to the car platform, and the ordinary steps leading from the car platform down. At the close of the plaintiff's evidence the court dismissed the complaint, on the ground that the plaintiff was guilty of contributory negligence.

We think this disposition of the case was correct. Contributory negligence could not be conclusively attributed to the plaintiff, as a matter of law, from the fact that the car was in motion at the time he sought to alight. According to his statement, "it was only just on the move." If this were the only element of alleged negligence on his part, it would have been for the jury to say whether, considering the rate of speed, he was guilty of contributory negligence. Filer v. Railroad Co., 49 N. Y. 47; Hunter v. Railroad Co., 126 N. Y. 23, 26 N. E. 958; Railroad Co. v. Egeland, 163 U. S. 93, 16 Sup. Ct. 975. But we think it was palpable negligence for him to jump from the car to the ground through the baggage door. It was at night, and the place was dark, so that he could not see where or on what he was jumping, besides which the ground was at the time covered with snow and ice. Nothing that the conductor said could be fairly construed as a direction to the plaintiff to take such a risk. While in one part of his testimony the plaintiff states the conductor told him he was to go forward to the door, this statement is subsequently modified. The only direction given by the conductor to the plaintiff and the other passengers was to go forward. The evidence of the son is to the same effect: "The

conductor came through and told father and some other people to go forward." The plaintiff had been in the habit of riding on the trains on this road. He testifies that he had never been through the baggage end of a combination car before. But it is a matter of common knowledge that baggage cars have doors at the ends, and car platforms, substantially the same as other cars. The plaintiff must be presumed to have been aware of that fact. All that the conductor's instruction to him could be construed as fairly meaning was that he could go to the other end of the car, and alight there, in the same manner as if he had gone out at the door where he originally sought exit. That was the course pursued by the son in safety. I am not even prepared to say that the direction of the conductor, had it been to jump from the car, would have been sufficient justification for the plaintiff, as the risk and danger were so plain and obvious.

The judgment appealed from should be affirmed, with costs. All concur.